# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **RONALD E. LEMIEUX,** | : | |
| *Plaintiff* | : | |
| | : | |
| **Vs.** | : | **C.A. No. 20** |
| | : | |
| **CVS PHARMACY, INC., alias,** | : | **Jury Trial Demanded** |
| *Defendant* | | |

## COMPLAINT

### I.    Introduction

1.    This action is brought by Ronald E. Lemieux ("Plaintiff") seeking declaratory and injunctive relief and compensatory and punitive damages for acts and/or omissions of CVS Pharmacy, Inc., alias, ("Defendant") in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA"); the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, *et seq.* ("FEPA"); and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, *et. seq.* ("RICRA").

### II.    Parties

2.    Plaintiff, Ronald E. Lemieux, at all times relevant to this action, was a resident of the City of Woonsocket, County of Providence, State of Rhode Island.

3.    Defendant CVS Pharmacy, Inc., alias, ("CVS" or "Defendant") is a domestic profit corporation duly organized and incorporated under the laws of the State of Rhode Island with a principal office located at One CVS Drive, Woonsocket, RI 02895.

### III.    Jurisdiction

4.    The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the ADEA.

5.      Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

### IV.    <u>Venue</u>

6.      Venue is proper in this Court insofar as the Defendant resides in or is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island and a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within the State of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.    <u>Exhaustion of Administrative Remedies</u>

7.      On or about December 26, 2018, Plaintiff filed a Charge alleging age discrimination with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC").

8.      Thereafter, with more than 120 days but not more than two (2) years having elapsed since the filing of Plaintiff's charge of discrimination, Plaintiff filed a Request for Notice of Right to Sue with the RICHR and the EEOC.

9.      On or about September 17, 2020, Plaintiff was issued a Notice of Right to Sue by the RICHR.

10.     On or about October 20, 2020, Plaintiff was issued a Notice of Right to Sue by the EEOC.

11.     Accordingly, insofar as he has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, the Plaintiff has timely instituted suit in the within matter.

12.     There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

## VI.    <u>Material Facts</u>

13.    Plaintiff was born on August 11, 1953 and was fifty-nine (59) years of age in March 2013.

14.    Plaintiff was a valued, loyal, experienced, productive, results-oriented, and dedicated employee of Defendant for over forty-five (45) years.

15.     At all relevant times, Plaintiff was employed by Defendant as a Director in Defendant's Retail Finance Department ("Finance") for over twenty-nine (29) years.

16.    For most of these 29 years, Plaintiff was an Assistant Treasurer, which made him a Corporate Officer of Defendant.

17.    On two (2) separate occasions, Defendant awarded Plaintiff the Chairman's Award, which is awarded to only approximately ten (10) employees annually companywide.

18.    In addition, Plaintiff was instrumental in implementing numerous cutting-edge initiatives and taking and/or recommending other actions that helped Defendant stay ahead of its competition and materially and positively impacted Defendant's bottom line.

19.    As discussed further below, in the year 2017, Plaintiff was rated by Defendant as an "outstanding performer."

20.    In the last seventeen (17) years, Plaintiff's efforts, in conjunction with team members, resulted in a favorable CVS profit and loss ("P&L") impact of over $1.8 billion.

21.    Defendant's stockholder value was always increased by Plaintiff's continued work efforts.

22.    In the last six (6) years of his employment, Plaintiff personally impacted CVS's P&L favorably by approximately $300 million.

23.    Plaintiff was instrumental in designing and developing a new environmental program with the new manager in the Treasury Department, Wendy Brant ("Ms. Brant"), by a

deadline set by the State of California, which negated significant penalties of approximately tens of millions of dollars.

24.    During this same period, Plaintiff obtained approvals from the SVP of Finance, SVP of Treasury, and SVP of Merchandising to implement a cost share environmental program to recoup funds from vendors for the disposal of waste, which contributed on average $15 million annually.

25.    Due to the efforts of Plaintiff, CVS was the first retailer to implement the cost-share environmental program and, after seeing significant savings by CVS, competitors then followed.

26.    Each year, Plaintiff identified numerous other cost savings initiatives and process improvements due to his years of experience and keen analytical insight into these opportunities.

27.    Plaintiff's continued effort, self-motivation, willingness to be a team player, and desire to make CVS better than the competition never stopped until the day Plaintiff retired, despite Defendant's adverse and discriminatory treatment of him.

28.    Previously, when CVS was downsizing, Liard Daniels, Defendant's former Senior Vice President ("SVP") of Finance, told Plaintiff not to be concerned about his job insofar as Plaintiff continuously brought significant P&L benefit to CVS and his continued efforts were acknowledged and appreciated.

29.    Because Defendant always rated Plaintiff in annual reviews as "meeting" expectations, "exceeding" expectations, or as "outstanding," performance-based bonuses in the amount of at least 25% and equity awards (stock options and later restricted stock units (RSU's) referred to herein collectively as "equity") of at least $40,000.00 were a regular part of Plaintiff's compensation as a Director since approximately 1988.

30.    On or about 2007, the bonus rate changed to 20% when Defendant merged with Caremark.

31.     At all relevant times until the year 2012, the annual equity award Plaintiff regularly received for meeting Defendant's expectations was valued at approximately $40,000.00.

### Defendant's Discriminatory Practices
### 2013-2016

32.     On or about 2012, management of the Finance department changed when Jeffrey Knudson ("Mr. Knudson") became the VP and later SVP.

33.     The compensation scheme also changed; Plaintiff was awarded only $25,000.00 in equity for the 2012 performance awards given in March 2013, even though Plaintiff had met Defendant's expectations for the 2012 year.

34.     That same year, another Director in Finance was also awarded only $25,000.00 in equity even though that Director had met Defendant's expectations for the 2012 year.

35.     Upon information and belief, that Director was over the age of forty (40) and thereby also in a protected age class.

36.     Despite meeting Defendant's expectations in 2014, 2015, and 2016, Plaintiff lost $10,000.00 in equity each year.

37.     Plaintiff also received no raise during 2015 and 2016.

38.     Jamie Zito ("Mr. Zito"), Defendant's Finance Human Resources Representative, confirmed to Plaintiff that the motivation for the change in Defendant's compensation scheme was that employees who were not a "flight risk" would not receive full performance-based compensation (raise, bonus, equity) in accordance with Defendant's guidelines.

39.     Indeed, Mr. Zito said that "equity was for the future of CVS," meaning employees younger than Plaintiff who would likely be employed by Defendant for years to come.

40.     On information and belief, employees identified as non-flight risks were invariably longstanding employees with plus or minus 20 years of service to Defendant—and were all within the protected age class.

41.     Defendant's motivation for failing to fully compensate Plaintiff was also revealed by Mr. Knudson himself, who basically stated, "where are these people [meaning older workers within the protected age class] going to go after all these years?"

42.     The obvious inference from Mr. Knudson's statement was that such employees were too old to move on to new careers and/or employers and could therefore be discriminated in their performance-based compensation packages, without any harm to the company.

### *2017*

43.     In 2017, Plaintiff was rated by Defendant as an "outstanding performer" largely because of his efforts in securing a $129 million ($.05 per share) favorable P&L impact for Defendant, which said funds were neither budgeted nor expected.

44.     For earning an "outstanding" rating, Defendant's guidelines provided for a bonus between 150-200% and an equity award of between $48,000.00 and $60,000.00.

45.     However, for 2017, Plaintiff received only a 130% bonus and equity of only $40,000.00, well below Defendant's guidelines. The equity received was equivalent to the amount received throughout his career.

46.     Moreover, in light of the amount of money Plaintiff brought in for Defendant ($129 million in favorable P&L results), Plaintiff should have been nominated and awarded the Chairman's Award for the year 2017 as Plaintiff had previously been awarded twice in his career for significant P&L contributions, which would have come with an additional estimated $40,000.00 in bonus and/or equity.

### *2018*

47.     The final insult was in the year 2018, when Plaintiff was rated by Defendant as "exceeds expectation," which was primarily attributed to assuming debit balance collections and

achieving $28 million in collections, showing his willingness to be a team player and dedication to improving the company's financial position.

48.     Despite Plaintiff's favorable "exceeds expectation" rating, on or about March 15, 2018, Defendant awarded Plaintiff no equity whatsoever even though Defendant's guidelines provided for an equity award of between $40,000.00 and $48,000.00.

49.     In addition, in 2018, another long-term, older employee in Finance also received a reduction in a performance-based equity bonus because of the same reasons previously articulated by Mr. Zito and Mr. Knudson:  the older employee was apparently not viewed as a flight risk, because the employee was perceived as having "nowhere else to go."

50.     Because the equity was pro-rated and would not vest until after Plaintiff retired, Plaintiff asked Defendant that the equity be made up for in bonus monies.

51.     In response, Plaintiff received a nominal increase in bonus by Defendant not equivalent to the pro-rated equity amount and Plaintiff's favorable "exceeds expectation" rating.

52.     After having provided one and one-half (1½) years notice, Plaintiff retired effective September 8, 2018.

### VII.    General Employment Law Allegations

#### A.    Age Discrimination

53.     Plaintiff was fifty-nine (59) years of age in March 2013 at the time he began to experience discriminatory treatment and within the protected age class under applicable law.

54.     As set forth above, Plaintiff was not provided with guideline level performance-based raises, bonuses, and/or equity from 2013 to his retirement in 2018, nor a recommendation for the Chairman's Award in 2017.

55.     Any employee providing $129+ million positive P&L effort should have been and invariably was recognized and compensated appropriately—Plaintiff received neither merely because

he was a longstanding, older worker with "nowhere else to go" according to CVS policy, or at least as it was implemented and applied in Defendant's Retail Finance Department.

56.    Defendant discriminated against Plaintiff in the terms and conditions of his employment on account of his age as described above.

57.    Specifically, Defendant awarded less performance-based compensation to Plaintiff than it awarded to employees not in the protected age class—not based on performance as provided under Defendant's own guidelines but based on Plaintiff's age.

58.    Defendant's express justification for the adverse actions taken against Plaintiff is direct evidence of discriminatory intent for the reasons set forth above.

59.    Defendant's intent to discriminate on account of Plaintiff's age is further established, in part, by its failure to comply with and follow its own performance-based compensation guidelines and past customary practice.

60.    Moreover, on information and belief, Defendant has engaged in a pattern and/or practice of age discrimination by paying older employees lower compensation for performance-based awards.

61.    Adverse employment action based in whole or *even in part* on account of a protected class status is a violation of the above-cited employment law provisions.

### B.    Harm

62.    Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to, those described herein, are in violation of the ADEA, FEPA, and/or the RICRA, and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad-faith and/or with reckless or deliberate indifference to the statutorily protected rights of Plaintiff.

63.    As a proximate result of Defendant's wrongful, unlawful, and/or discriminatory acts and/or omissions, including, but not limited to, those described herein, Plaintiff suffered, is now

suffering, and will continue to suffer equitable and compensatory damages, including, but not limited to, loss of income, loss of equity, pain and suffering, emotional distress, loss of enjoyment of life, humiliation, damage to Plaintiff's professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

## VIII.   Causes of Action

64.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 63 of this Complaint in each of the counts below with the same force and effect as if fully set forth therein.

### Count One
### *Age Discrimination in Employment Act*
### *29 U.S.C. § 621, et seq.*

65.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination on the basis of age in violation of the ADEA, which has caused Plaintiff to suffer damages as aforesaid and thereby deprived Plaintiff of his rights secured under the ADEA.

### Count Two
### *Rhode Island Fair Employment Practices Act,*
### *R.I. Gen. Laws § 28-5-1, et seq.*

66.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination on the basis of age in violation of the FEPA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the FEPA.

### Count Three
### *Rhode Island Civil Rights Act of 1990,*
### *R.I. Gen. Laws § 42-112-1, et. seq.*

67.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of age against Plaintiff, and thereby

wrongfully interfered with Plaintiff's contract of employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

## IX.    Prayers for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1.    A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the ADEA, the FEPA, and/or the RICRA.

2.    An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3.    An injunction and/or other equitable relief, including but not limited to an award of back pay as well as front pay and other compensation and/or benefits to make him whole for all earnings and benefits he would have received but for Defendant's discriminatory conduct.

4.    An award of compensatory damages.

5.    An award of exemplary and/or punitive damages.

6.    An award of liquidated damages.

7.    An award of prejudgment interest, reasonable attorneys' fees, and costs.

8.    Such other and further relief as this Court deems just and proper.

### X.     <u>Demand for Jury Trial</u>

Plaintiff hereby demands a trial by jury on all counts so triable.

### XI.     <u>Designation of Trial Counsel</u>

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

<div style="margin-left: 50%;">

Plaintiff,
By his attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

</div>

**Dated:  November 17, 2020**          **/s/ Richard A. Sinapi, Esq.**
                                        **/s/ Chloe A Davis, Esq.**
                                        **Richard A. Sinapi, Esq. (#2977)**
                                        **Chloe A. Davis (#9334)**
                                        2374 Post Road, Suite 201
                                        Warwick, RI 02886
                                        Phone: (401)739-9690
                                        FAX: (401) 739-9040
                                        Email:  ras@sinapilaw.com
                                        Email:  cad@sinapilaw.com